U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 07-02546

ORDER DENYING MOTION TO CONVERT

The relief set forth on the following pages, for a total of 15 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/18/2007**



US Bankruptcy Court Judge
District of South Carolina

Entered: 07/18/2007

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | Case No. 07-02546-dd |
| Broad Creek Edgewater, LP, ) | |
| ) | |
| Debtor. ) | |
| ) | |

ORDER DENYING MOTION TO CONVERT TO CHAPTER 11

THIS MATTER is before the Court on the Debtor's motion to convert this case to one under Chapter 11 of the Bankruptcy Code. Distinct Edgewater, LLC ("Distinct"), Edgewater on Broad Creek Horizontal Property Regime and Edgewater on Broad Creek Property Owners Association (jointly "Property Owners Association"), and the Chapter 7 trustee filed objections to the motion. A hearing was held on July 13, 2007.

Findings of Fact[1]

1. Field & Golan LLP, Golan & Christie LLP, and Byrne Acquisition Group LLC as successor to Real Estate TV, Inc. (jointly "Original Petitioning Creditors") filed a petition for involuntary relief pursuant to 11 U.S.C. § 303[2] against Broad Creek Edgewater, LP ("Debtor") on May 9, 2007.

2. Thomas & Hutton Engineering Co. and the Property Owners Association (jointly with the Original Petitioning Creditors "Petitioning Creditors") filed notices of intention to join in the involuntary petition.

---

[1] This order contains the findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052, made applicable to contested matters by Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* will be by section number only.

3. The summons and involuntary petition were served and no responsive pleading was filed. Relief under Chapter 7 of the Bankruptcy Code was entered on June 7, 2007 and the United States Trustee appointed Kevin Campbell interim trustee.

4. Debtor subsequently filed a motion to convert to a case under Chapter 11. The motion states that the case has not previously been converted from another Chapter and that Debtor is eligible for relief under Chapter 11. Distinct, the Chapter 7 trustee, and Property Owners Association filed responses[3] objecting to conversion.

5. Debtor owns real property on which a condominium project is partly completed. Debtor is a South Carolina Limited Partnership, composed of a general partner, Winnetka Associates Edgewater, LLC ("Winnetka LLC"), and a limited partner, Maatschap Hilton Head Broad Creek, a partnership under the laws of the Netherlands ("Maatschap"). The sole member of Winnetka LLC is Winnetka Associates I Limited Partnership ("Winnetka I") and the sole general partner of Winnetka I is Baird Pacific West, Inc. ("Baird West"). The testimony was that Wyllys Baird, the former "manager" of the Debtor has ceded control of Baird West to his father, John Baird, a substantial unsecured creditor[4]. Wyllys Baird has not turned over the books and records of Debtor.

6. Winnetka LLC and Maatschap entered into a tolling agreement in connection with an ongoing dispute concerning management of Debtor. Maatschap has delivered a letter to Winnetka LLC purporting to remove it as general partner. Winnetka LLC disputes the existence of the factors which purportedly give rise to Maatschap's authority to remove it as general partner.

---

[3] Property Owners Association stated in closing argument that it was "on the fence." It expressed the view that a conversion to Chapter 11 should be accompanied by strict controls.

[4] Distinct and Property Owners Association contend that this debt, and other debt owed to entities related to John Baird and the Baird family generally, is actually an equity contribution.

7. Debtor has retained counsel. It has also retained John Curry, a Hilton Head resident and real estate broker, to assist with maintaining the property and to sell the property.

8. Mr. Curry has been so engaged for a period of approximately six months. Initially he was paid by John Baird, in an amount now totaling approximately $29,000. The Debtor now proposes to employ Mr. Curry as a professional to assist it with its fiduciary duties if this case is converted to Chapter 11. Mr. Curry testified that he previously was engaged in connection with this property by a law firm to perform a marketing study. He no longer recalls the name of the firm or the identity of its client. He does recall that the firm failed to pay his total fee for the study and that John Baird later paid him for the lost income.

9. Mr. Curry's dealings with John Baird and the Debtor have been very limited. His primary contact has been proposed counsel for the Debtor, Mr. Levy. Mr. Curry's file, produced in Court in response to Distinct's subpoena, is, at best, approximately two inches thick – including Debtor's bankruptcy schedules and statements. Mr. Curry also has some building plans that were not produced in the courtroom.

10. Debtor's building permit from the Town of Hilton Head expired in December, 2006. Mr. Curry testified that no project management was in place at the time the permit expired, resulting in the failure to seek extension of the permit. Other permits for the condominium project are contingent on the building permit. Mr. Curry has been successful in reviving the permit and obtaining extensions of the permit. Mr. Curry testified that the Town of Hilton Head now has a new building code and that expiration of the permit and application of the new building code would be burdensome to the Debtor and to the estate.

11. Mr. Curry testified to a previous negotiation with a potential buyer for the project that resulted in a letter of intent. He also testified that the letter could perhaps be revived but that it had numerous contingencies and had in fact expired.

12. Mr. Curry testified, without objection, that it was his opinion that there were potential buyers for the property at a price that would return some dividend to unsecured creditors.

13. Mr. Curry's testimony, again without objection, was that there are numerous "complications" with the property, that he is not engaged to deal with these complications but is waiting for the attorneys to handle them, and that a sale in a Chapter 11 proceeding would take 2 to 9 months.

14. Mr. Curry testified, again without objection, that John Baird had expressed a willingness to "fund" the ongoing Chapter 11, at least to the extent of maintaining the status quo, but that this funding might not be available in a Chapter 7.

15. Mr. Curry testified that any buyer would be required to perform a significant "due diligence" investigation into the property and the project.

16. The condominium project proposed for the real property owned by Debtor envisions 6 buildings and a total of 144 units. The project dates back to 1999. One building, with 23 units, was completed approximately two years ago. A second building was begun but construction was abandoned approximately one year ago.

17. The testimony from several witnesses indicated that the condominium market at Hilton Head Island is slower than in the past but that it is expected to recover, perhaps within a year.

18. Richard Monocchio is the President of Baird West. He is a real estate project consultant and a resident of Chicago. He was asked to serve as President of Baird West by John Baird, has no compensation agreement for his services, and has spent 10 to 12 hours since early June 2007 on matters relating to Debtor including meetings, telephone calls and review of the schedules and statements filed by Debtor under Mr. Monocchio's signature. Mr. Monocchio's testimony was that he relied on the attorneys, including attorneys for Wyllys Baird, for the truthfulness of the schedules and statements and had no independent knowledge concerning Debtor or its financial affairs. He has not visited the condominium project. Thorough examination of Mr. Monocchio established that he knows very little or nothing of Debtor. Cross examination of Mr. Monocchio and Mr. Curry establish that no reports, budgets or other indicia of oversight are prepared.

19. Debtor currently has no employees.

20. The unsecured debt of Debtor is composed of $9.2 million of which nearly $8 million is owed to John Baird or entities related to Mr. Baird or his family.

21. John Baird testified that he is owed approximately $5 million and that he "put in" money for the first of the buildings at the condominium project. He testified that financing for next phase of the project is not available in the current market. Mr. Baird testified that he is not an owner of Baird West but that he is the director, following an assignment from his son, Wyllys Baird. Mr. Baird testified that he is willing to "fund the project" until a buyer is found, although there may be a dollar and time limitation. Mr. Baird also testified that if Baird West is not the general partner or if there is a Chapter 7 trustee that he would probably not be willing to advance funds. Mr. Baird is not interested in completing the condominium project but only in selling the property.

22. James P. Strecansky, a principal of Strecansky & Co., Inc. ("Strecansky"), testified. Strecansky was the general contractor for the second, and still incomplete, building in the condominium project. Distinct has purchased Strecansky's claim. Mr. Strecansky testified that he completed "punch list" items on the first building and worked on the second building until he became concerned about payment. He testified that Wyllys Baird was not capable of handling the condominium project and provided as examples the fact that financing was not secured prior to the start of construction, the lack of final architectural plans, the failure to properly budget and account for the project, poor civil design of the order of construction of buildings on the project, and setting prices for pre-sales of condominium units before the actual cost per unit was known. Strecansky has an ongoing relationship with Distinct on another project. Strecansky testified that he would complete the unfinished building if Distinct obtained control of the property but would not work with the Debtor. Strecansky also testified that finishing the building would result in great "exposure" for any builder given the length of time that the structure had been exposed to the elements and that this increased liability would be even greater for a builder new to the project.

23. Harry C. Sherman, III, the principal of Distinct, testified. He or his companies have worked with Maatschap on other projects. He considered buying the general partnership interest of Winnetka LLC. Distinct purchased the note and mortgage in favor of Regions Bank and some or all of the mechanics lien claims, including the Strecansky claim. Distinct was in the process of foreclosing its liens when the involuntary petition was filed. It has filed a motion for relief from stay. He has a commitment to purchase the property and financing for completion of the unfinished building. Mr. Sherman testified that proceeding at this time with the project will result in condominium units available at precisely the time the

market improves. Mr. Sherman testified as to his willingness to advance funds to maintain the property for the time necessary for a sale by a Chapter 7 or Chapter 11 trustee. He admits the profit motive for his interest in the property.

24. The testimony suggests a range of value for the real property owned by Debtor in the range of $10 to $15 million. The secured debt is in the $8 to $10 million range.

25. Debtor does not propose to continue with the condominium project but, even in the event of conversion to Chapter 11, wishes the real property liquidated.

26. Debtor was grossly mismanaged prior to the filing of the involuntary petition and there is no management, other than by title, in place at this time. Well qualified counsel and a well qualified real estate professional are in place. The real estate professional has limited information about the property and has only begun the effort necessary to develop a marketing plan. Both professionals were employed and paid by John Baird. Richard Monocchio, the officer ultimately responsible for the general partner has no knowledge of the business and there are issues of corporate governance that will detract from and likely derail the pursuit of a Chapter 11 sale of the assets of Debtor. The Debtor is currently grossly mismanaged, or more precisely un-managed, and this constitutes gross mismanagement of the estate.

27. Debtor is so inattentive to matters that it now disputes the claim of one of the Original Petitioning Creditors but did not raise the dispute in answer to the Summons. The adjudication of this involuntary case was uncontested.

28. The record yields no unusual circumstances that establish that if this case were a Chapter 11 that conversion to Chapter 7, appointment of a trustee or dismissal would not be in the best interests of the creditors and the estate.

Conclusions of Law

The Debtor's motion to convert its Chapter 7 case to a case under Chapter 11 is made pursuant to § 706(a) of the Bankruptcy Code. Section 706 states in relevant part,

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

*§ 706*.

In a recent opinion, *Marrama v. Citizens Bank*, 127 S. Ct. 1105 (2007), the U.S. Supreme Court determined that a debtor's "right" to convert from a Chapter 7 to a Chapter 13 case is not absolute[5], but rather is limited by § 706(d) which states that, "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *§ 706(d)*. While the issue in *Marrama* was conversion from Chapter 7 to 13, the governing statute, § 706, applies equally to conversions from Chapter 7 to 11.

This is the first occasion for this Court to apply *Marrama*. Its teachings require a departure from our prior practice in dealing with first time motions to convert. Ascribed to the view that the right to convert was absolute, or nearly so, this Court previously entered orders converting cases without notice or a hearing. This practice found its genesis in the

---

[5] The phrase "absolute right," which was commonly used in § 706(a) conversion cases, is derived from the legislative history and is not found in the statute. The *Marrama* Court specifically addresses the legislative history and states that it is inconsistent with the statutory language explaining,

> The Committee Reports' reference to an "absolute right" of conversion is more equivocal than petitioner suggests… [T]he statement that he should "always" have that right is inconsistent with the earlier recognition that it is only a one-time right that does not survive a previous conversion to, or filing under, Chapter 13. More importantly, the broad description of the right as "absolute" fails to give full effect to the express limitation in *subsection (d)*. The words "unless the debtor may be a debtor under such chapter" expressly condition[s] [a debtor's] right to convert on his ability to qualify as a "debtor" under Chapter 13.

*Marrama v. Citizens Bank*, 127 S. Ct. 1105, 1112 (2007).

1991 Advisory Committee Notes to Fed. R. Bankr. P. 2002(a)(5) suggesting that notice is not required when the Court determines that a hearing is not required. Our Court of Appeals' decision in *In re Finney*, 992 F.2d 43 (4th Cir. 1993), discussed below, buttressed this view. Since the right to convert was absolute, or nearly so, no hearing was necessary.

The objections to conversion filed in this instance necessitate a hearing and 20 days notice was given. The burden of proof on the motion to convert is on the debtor. The debtor must first make a *prima facie* case for conversion (showing that there has been no prior conversion of the case, that the debtor is eligible for relief under § 109, and that conversion is to achieve a purpose permitted under the proposed Chapter). The burden of coming forward with evidence then shifts to the objecting parties to show that the debtor is not eligible for relief under *Marrama*.

The *Marrama* majority determined that "[t]here are at least two possible reasons why [a debtor] may not qualify as a debtor [under Chapter 13]. [O]ne arising under *§ 109(e)* of the Code, and the other turning on the construction of the word 'cause' in *§ 1307(c)*." The Court further explained,

> The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief. More pertinently, the latter provision, *§ 1307(c)*, provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief. None of the specified causes mentions prepetition bad-faith conduct. Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause." In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of "'honest but unfortunate debtors'" that the bankruptcy laws were enacted to protect. The text of *§ 706(d)* therefore provides adequate authority for the denial of his motion to convert.

*Marrama*, 127 S. Ct. 1105, 1110-11 (U.S. 2007)(*internal citation omitted*).

While *Marrama* specifically deals with conversion from a Chapter 7 to a Chapter 13 case and whether bad faith constitutes "cause" as termed in § 1307(c), this Court believes that *Marrama* applies to motions to convert to Chapter 11. Section 1112(b) is comparable to § 1307(c) and serves the same limiting purpose required by the Supreme Court. This Court reads *Marrama* as standing for the proposition that a court should address a motion to convert under § 706(a) as it would address an initial petition filed under Chapter 13 (or Chapter 11) in its determination of whether the case should be dismissed or converted.[6] *See Id. citing the lower court, In re Marrama,* 430 F.3d 474, 479 (2005)("We can discern neither a theoretical nor a practical reason that Congress would have chosen to treat a first-time motion to convert a chapter 7 case to chapter 13 under *subsection 706(a)* differently from the filing of a chapter 13 petition in the first instance").

Thus, if "cause," either enumerated or in the case law that has developed, exists to convert or dismiss the Chapter 13 or 11 case then it would be procedurally and practically inefficient to grant a motion to convert a Chapter 7 case to a case under Chapter 13 or 11 only to immediately dismiss the case or reconvert it to a Chapter 7, and therefore, the motion to convert should be denied. This overturns the practice in this circuit, following *In re Finney*, 992 F.2d 43 (4th Cir. 1993), of recognizing the absolute right to convert a case and *sua sponte* re-conversion under the right circumstances. Finney, also a bad faith case, left

---

[6] As with an original petition, the Court does not review every motion to convert or dismiss for the existence of a record to deny the relief sought. The role of the Court is to hear disputes raised by the parties. In some instances, as a court of equity, the Bankruptcy Court may raise these issues *sua sponte*. The burden, however, falls on trustees, creditors and other parties to object to motions to convert or dismiss and thus join the issues for a determination by the Court.

unresolved the question of the appropriate "circumstances, if any, [that] would justify invocation of § 105(a) to deny a § 706(a) motion outright." *Finney* at 45.

The extent to which *Mirrama* erodes or compliments the *Finney* requirement for a finding of sufficiently "egregious" behavior to warrant denial of conversion and the application of the *Carolin*[7] requirements of proof of subjective bad faith and objective futility of reorganization prospects remains for another day. To read *Mirrama* as only a bad faith case is to read it too narrowly. If any cause for conversion or dismissal exists, not just cause stemming from bad faith, then *Mirrama* counsels denial of the motion to convert from Chapter 7.

As stated before the Court believes *Marrama* is equally applicable to requests for conversion to Chapters 11 or 13, but with a caveat. Before the 2005 amendments to the Bankruptcy Code § 1112 contained the language "may convert," which appears in the present § 1307(c). The 2005 amendments to the Bankruptcy Code replaced the language "may convert" in § 1112 with "shall convert."

The present § 1112 states in relevant part,

> (b) (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

§ 1112.

---

[7] *Carolin Corp. vs. Miller*, 886 F.2d 693 (4th Cir. 1989). *Carolin* recognizes "a generalized 'good faith' requirement. . . implicit in § 1112(b). . . .[which] permits dismissal not only for the enumerated circumstances but, more generally, 'for cause.' *Id*. at 699. Permitting dismissal would also permit conversion as § 1112 applies equally to both.

This change diminishes the discretion the bankruptcy courts have in conversions to Chapter 11. If cause for dismissal or conversion to Chapter 7 exists[8] discretion not to dismiss or convert is limited to those instances in which the court makes specific findings that unusual circumstances "establish that the requested conversion or dismissal is not in the best interests of creditors and the estate," or if an objecting party in interests establishes that the facts of a specific case fall within the confines of §1112(b)(2). *Id.* Once cause is established under § 1112, the courts in our circuit are counseled to determine which alternative, dismissal or conversion, best serves the interests of the creditors and of the estate. *In re Superior Siding*, 14 F.3d 240, 243 (4th Cir. 1994).

Here, cause for conversion or dismissal of the proposed Chapter 11 proceeding is shown to exist. An unsecured creditor[9], John Baird, has been given control of Debtor by his son. The Limited Partner and General Partner are engaged in a corporate governance dispute. The President of Baird West, ultimately controlling the General Partner, is without information concerning Debtor and he signed schedules under penalty of perjury without any basis (other than that the lawyers told him the information was correct) on which to base his assurances of truth. The records of Debtor remain with Wyllys Baird. The real estate professional does not have the information that he needs to do his job and has not made significant progress in the previous six months. In other words, the Debtor has no "corporate" management and this fact proves gross mismanagement of the estate and a breach of fiduciary obligation to the creditors. Any suggestion that this level of inattention is merely the general financial incompetence that precedes most bankruptcy cases ignores the

---

[8] Section 1112(b)(4) contains a nonexclusive list of sixteen scenarios which constitute cause.
[9] The reference to John Baird as an unsecured creditor is not a determination of his status but rather is for convenience and in acknowledgement that the Debtor scheduled him as such. More than once during the hearing parties suggested that his claim might be subordinated to those of other unsecured creditors.

complete void of management found here. Gross mismanagement of the estate is one of the enumerated instances of cause for dismissal of conversion of a Chapter 11 case. § 1112(b)(4)(B).

To the extent that *Carolin* here prescribes the need for a finding of objective futility of reorganization,[10] at least at the very outset of the case,[11] the evidence developed of the absence of management bears on the futility of reorganization just as proof of subjective bad faith and objective futility of reorganization overlap. *See Carolin* at 701. The professionals proposed for employment by Debtor may well have the expertise to carry out reorganization but they do not have a functioning client to make decisions about the matter. John Baird only wishes to liquidate the assets of Debtor. The real principals, never identified through any evidence by Debtor, are shielded by layers of partnerships, corporations and limited liability companies. The real estate market is, by testimony from Debtor's witnesses, "in a trough." Debtor wishes to speculate on an improvement in the market at the risk of the secured creditors. This contravenes the principles enunciated for good faith reorganization efforts in our circuit. *See Carolin* at 705 *citing In re American Property Corp.*, 44 B.R. 180. 182 (Bankr. M.D. Fl. 1984). There is no going concern and this financially troubled business will not be resuscitated. The business is not viable and no one proposes that it carry on in any fashion whatsoever. The prospect of reorganization is objectively futile.

In applying *Superior Siding* and balancing the expressed wishes of creditors with the best interests of creditors and the estate, the Court notes the support of the Original Petitioning Creditors for conversion to Chapter 11 and the support of the Property Owners

---

[10] Judge Widener in dissent suggests that the majority couples subjective bad faith and objective futility in reorganization only because bad faith is not an enumerated ground for conversion or dismissal. *Carolin* at 708. Here the ground for conversion or dismissal is enumerated as cause by the statute.

[11] *Carolin* at 694.

Association for conversion, but only if sufficient oversight (suggesting a trustee) is in place. The Limited Partner and Distinct strongly urge that the case remain in Chapter 7. In closing argument, counsel for John Baird stated that if a Chapter 11 trustee would be envisioned then his preference would be to remain in Chapter 7. One possibility under Chapter 11 would certainly be the appointment of a trustee. *See* § 1104(a)(3). Many of the same facts that were established at this hearing on the motion to convert would apply to and be supportive of a trustee. The United States Trustee noted his intention to file a motion for trustee if the case were converted to Chapter 11 and the court scheduled a hearing for its intention to consider a *sua sponte* appointment of a Chapter 11 trustee (and a hearing on any trustee motion the United States Trustee or another party might file) for July 26, 2007. The complete absence of management, other than as offered by professionals employed by the largest unsecured creditor, warrants a trustee or, more simply, denial of the motion to convert.

The suggestion of Debtor and others that liquidation of the assets of Debtor would produce a greater return under Chapter 11 is not supported by any evidence submitted in this case. Given the interest of John Baird in funding operations during a sales period, of Harry C. Sherman III in funding operations and purchasing the project, and the interest represented by the earlier letter of intent and the several potential purchasers known to Mr. Curry, the Chapter 7 trustee's potential to liquidate the property for the benefit of creditors cannot, on the evidence, be said inferior to that of this unguided Debtor.

While Debtor made a *prima facie* case for conversion, Distinct and the Limited Partner more than established cause for conversion, dismissal or the appointment of a trustee were this case presently subject to the provisions of Chapter 11. Debtor thus fails in its burden of proof and its motion to convert from Chapter 7 to Chapter 11 is DENIED.